**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 07-526 T
(Judge Nancy B. Firestone)

ALBERT BOVA and DAVID TONER, CO-EXECUTORS OF
THE ESTATE OF MARGARET WALSONAVICH

Plaintiffs,

v.

THE UNITED STATES

Defendant.

**MOTION TO DISMISS**

Defendant, the United States, respectfully moves the Court, pursuant to RCFC 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief can be granted because plaintiff's claim for refund is barred by the statute of limitations established by § 6511(d)(2).[1] Moreover, plaintiffs have failed to establish that their claim for refund qualifies for relief from this statute of limitations under § 6511(h) and Rev. Proc. 99-21. Accordingly, plaintiffs' Complaint must be dismissed.

STATEMENT OF FACTS[2]

Plaintiffs, Albert Bova ("Mr. Bova") and David Toner ("Mr. Toner"), are the co-executors of the Estate of Margaret Walsonavich ("Ms. Walsonavich"). (Compl. ¶ 3). At all relevant times, Ms. Walsonavich was a resident of the Commonwealth of

[1] Unless otherwise indicated, all references to "§" or "section" are made in reference to the Internal Revenue Code of 1986 (26 U.S.C.).

[2] For the purposes of this motion, defendant assumes the facts alleged in the complaint to be true. However, discovery has yet to be conducted, and if the Court were to deny this motion, defendant might need to conduct discovery and might dispute some of plaintiffs' allegations.

Pennsylvania. (Compl. Exhibits A and B). Ms. Walsonavich filed a timely return for her 1996 tax year on April 15, 1997. The return reported a tax due of $545,262, which was paid in full with the return. (Compl. Exhibit C page 2, line 17). On February 3, 1998, Ms. Walsonavich executed a general power of attorney naming her accountant, Albert Bova, as her attorney-in-fact and specifically authorizing him to manage her financial affairs, including "all matters pertaining to federal, state or local taxes". (Compl. ¶ 7; Compl. Exhibit A, pages 1, 3). Significantly, the power of attorney was *not* made contingent upon the occurrence of some future event, such as the incapacity of the principal. (Compl. Exhibit A). Ms. Walsonavich was 77 years old and in good health at the time she executed the power of attorney. (Compl. ¶ 9). Approximately four years later, Ms. Walsonavich timely filed her 2001 tax return on April 15, 2002. (Compl. ¶ 10; Compl. Exhibit B). Her 2001 return reported a net operating loss of $221,957. (Compl. Exhibit B, Net Operating Loss Worksheet, page 29, line 28). The loss represented Ms. Walsonavich's share of losses incurred by several S corporations and residuary trusts in which she held ownership interests. (Compl. Exhibit B, Schedule E). In or about February 2003, Ms. Walsonavich's accounting firm prepared an amended return for her 1996 tax year, on which the loss reported for 2001 was carried back to offset some of the income she reported in 1996.[3] (Compl. ¶ 12). Use of the net operating loss would have allegedly reduced Ms. Walsonavich's 1996 tax liability, which she had already paid, giving rise to an overpayment in the amount of $99,583. (Compl. ¶ 13; Compl. Exhibit C). Ms. Walsonavich's accountants did not file the amended 1996 return when it was

[3] Ms. Walsonavich's amended 1996 return was her claim for a refund for the 1996 tax year, because the return showed that she was due a refund as a result of the carryback from 2001 which offset some of the 1996 income on which she had already paid tax. Treas. Reg. § 301.6402-3(a)(2).

prepared in February of 2003. (Compl. ¶¶ 12, 18). Rather, the amended 1996 return was given to Ms. Walsonavich with instructions to file the document. (Compl. ¶¶ 12, 18).

Around April 2004, Ms. Walsonavich began to exhibit symptoms of Asperger's Syndrome, a neurological disorder characterized by dementia and a loss of cognitive ability. (Compl. ¶¶ 15, 16). By March of 2005, Ms. Walsonavich's condition deteriorated to the point where she was hospitalized and admitted to a nursing home. (Compl. ¶ 16). She passed away less than a year later, on February 4, 2006. (Compl. ¶ 22). Soon after, Mr. Bova and Mr. Toner were appointed the co-executors of her estate. (Compl. ¶ 23).

Prior to her death, Mr. Bova and Ms. Walsonavich's attorney visited her at the nursing home where she was receiving care. (Compl. ¶ 17). This visit allegedly took place in early April 2005. (*Id.*). Based on the behavior they observed, Mr. Bova claims that he and her attorney decided to "activate" the power of attorney that Ms. Walsonavich executed in February of 1998. (*Id.*). Acting under this power of attorney, Mr. Bova secured Ms. Walsonavich's financial records and discovered that she never filed the 1996 amended return which her accountants prepared for her in February of 2003. (Compl. ¶ 18). Mr. Bova caused her accountants to file the 1996 amended return on May 25, 2005 – 40 days *after* three years from the date on which Ms. Walsonavich's 2001 tax return was due. (Compl. ¶¶ 14, 18). On July 15, 2005, the Internal Revenue Service ("the IRS" or "the Service") disallowed the refund claim because it was filed more than three years after the due date for the tax return that generated the loss that was carried back to the 1996 tax year. (Compl. ¶ 21; Exhibit E). On June 28, 2006, Mr. Bova and Mr. Toner filed a letter with the IRS protesting the disallowance of the 1996 refund claim

on behalf of Ms. Walsonavich's estate.[4] (Comp. ¶ 24). More than one year later, no action had been taken by the IRS with respect to their protest. (*Id.*). Plaintiffs filed their Complaint on July 13, 2007.

ANALYSIS

I. Plaintiff's claim for refund was not timely because Section 6511(d)(2) provides a three-year statute of limitations for claiming refunds that arise by virtue of a net operating loss carryback.

Section 6511(d)(2) provides taxpayers with an opportunity to claim a refund for overpayment of tax that arises by virtue of a net operating loss or a net capital loss that occurs in a current tax year, which, when carried back to a prior tax year, reduces the taxpayers' liability for the earlier year. Such a claim for refund must be filed within three years of the due date for filing the tax return for the year that generates the loss carryback. § 6511(d)(2). In the present case, Ms. Walsonavich experienced a net operating loss in 2001. (Compl. ¶ 11). She was entitled to carry the loss back up to 5 years, to and including 1996. § 172(b)(1)(H). Use of the carryback against her 1996 income would have allegedly resulted in an overpayment of $99,583 for the 1996 tax year. (Compl. ¶ 13). The due date for filing Ms. Walsonavich's 2001 tax return, which generated the net operating loss carryback, was April 15, 2002. (Compl. ¶ 14). The statute of limitations established by Section 6511(d)(2) permitted Ms. Walsonavich to file a claim for refund of the alleged 1996 overpayment any time within three years after the date that her 2001 tax return was due. That period expired on April 15, 2005. Ms. Walsonavich's claim for refund for the 1996 tax year was filed on May 25, 2005 – 40

[4] The IRS administrative file does not contain a copy of the protest letter plaintiffs allegedly filed with the Service. Nor did plaintiffs attach a copy of the letter to the Complaint. Defendant notes, however, that plaintiffs do not allege that additional documentation was filed with the protest letter that might satisfy the requirements of § 6511(h) and Rev. Proc. 99-21.

days after the period of limitation established by Section 6511(d)(2) had expired. (Compl. ¶ 18). Her refund claim was untimely, and the IRS properly denied the claim. Her estate cannot recover in this suit because the underlying claim is barred by the applicable statute of limitations.

II. <u>Section 6511(h) provides relief from the period of limitation imposed by Section 6511(d)(2) only for taxpayers who have fully satisfied the requirements of Rev. Proc. 99-21.</u>

Section 6511(h) provides an exception to the period of limitation described in § 6511(d)(2) for taxpayers who are "financially disabled". Plaintiffs attempt to invoke this provision and contend that Ms. Walsonavich became financially disabled at least as early as April 2004. (Compl. ¶ 15). However, on its face, plaintiffs' contention fails to satisfy the requirements of the governing statute and related authority.

A. <u>Section 6511(h) and Rev. Proc. 99-21 provide objective requirements to qualify for relief from the statute of limitations imposed by Section 6511(d)(2).</u>

For the purposes of § 6511(h), an individual is financially disabled if he or she is "unable to manage his [or her] financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or can be expected to last for a continuous period of no less than 12 months." § 6511(h)(2)(A). However, "[a]n individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require." *Id.* Furthermore, "an individual shall not be treated as financially disabled during any period that such individual's spouse *or any other person* is authorized to act on behalf of such individual in financial matters." § 6511(h)(2)(B) (emphasis added).

The Secretary set forth the "form and manner" to prove financial disability for individuals requesting relief under § 6511(h), in Rev. Proc. 99-21. Section 4 of Rev. Proc. 99-21 provides that an untimely refund claim must have attached:

> (1) a written statement by a physician (as defined in § 1861(r)(1) of the Social Security Act)[5], qualified to make the determination, that sets forth:
>
> > (a) the name and description of the taxpayer's physical or mental impairment;
> >
> > (b) the physician's medical opinion that the physical or mental impairment prevented the taxpayer from managing the taxpayer's financial affairs;
> >
> > (c) the physician's medical opinion that the physical or mental impairment was or can be expected to result in death, or that it has lasted (or can be expected to last for a continuous period of not less than 12 months;
> >
> > (d) to the best of the physician's knowledge, the specific time period during which the taxpayer was prevented by such physical or mental impairment from managing the taxpayer's financial affairs; and
> >
> > (e) the following certification, signed by the physician: I hereby certify that, to the best of my knowledge and belief, the above representations are true, correct, and complete.
>
> (2) a written statement by the person signing the claim for credit or refund that no person, including the taxpayer's spouse, was authorized to act on behalf of the taxpayer in financial matters during the period described in paragraph (1)(d) of this section. Alternatively, if a person was authorized to act on behalf of the taxpayer in financial matters during any part of the period described in paragraph (1)(d), the beginning and ending dates of the period of time the person was so authorized.

[5] The Social Security Act defines a "physician" as a doctor of medicine, osteopathy, dental surgery, dental medicine, podiatric medicine, optometry, or arts, or a chiropractor, legally authorized to practice his or her respective field of expertise by the State or jurisdiction in which services are performed. 42 U.S.C. § 1395x(r).

B. The facts alleged in the Complaint fail to satisfy the requirements of § 6511(h) and Rev. Proc. 99-21.

Ms. Walsonavich's refund claim fails to qualify for § 6511(h) relief for two reasons. First, at all times relevant to Ms. Walsonavich's alleged financial disability, Mr. Bova was in fact authorized to manage her financial affairs, including all matters pertaining to federal, state or local taxes. (Compl. Exhibit A, page 3). Second, the 1996 refund claim did not satisfy the physician's statement requirement of Rev. Proc. 99-21.

1. Mr. Bova was authorized to manage Ms. Walsonavich's financial affairs since February 3, 1998.

For the purposes of this motion, defendant does not question that Ms. Walsonavich suffered from one or more medical conditions that prevented her from managing her financial affairs during the final years of her life. However, plaintiffs admit that when she was in good health, Ms. Walsonavich had the good sense to entrust the management of her personal finances to other individuals who make no claim to have suffered similar ailments during the years in question. The power of attorney that Ms. Walsonavich granted to Mr. Bova on February 3, 1998 – in flat contradiction of the requirements to be treated as "financially disabled" under § 6511(h)(2)(B) – ensured that someone was authorized to manage her financial affairs during the period of her alleged financial disability. (Compl. ¶ 7; Compl. Exhibit A). Plaintiffs contend that "no one was authorized to act on her behalf in financial matters until early April 2005, when the power of attorney was activated." (Compl. ¶ 20). Plaintiffs are in error in proposing that the instrument executed by Ms. Walsonavich in February of 1998 required some formal "activation" or other triggering event, to empower Mr. Bova to act in his capacity as Ms. Walsonavich's attorney-in-fact.

Pennsylvania law does recognize "springing" powers of attorney, in which the powers are said to "spring" into existence upon the occurrence of some contingency identified in the instrument creating the power. The enabling Pennsylvania statute provides, "[a] principal may provide in the power of attorney that the power shall become effective at a specified future time or upon the occurrence of a specified contingency, including the disability or incapacity of the principal."[6] 20 Pa.C.S.A. § 5604(a). No such language was included in the power of attorney that Ms. Walsonavich executed on February 3, 1998. The power of attorney granted to Mr. Bova can only be construed to have taken effect on the date of its execution. Accordingly, any alleged decision to "activate" Mr. Bova's power of attorney in early April 2005, was redundant and to no effect. Mr. Bova's authority to manage Ms. Walsonavich's financial affairs was activated on February 3, 1998. Any oral agreement between Mr. Bova and Ms. Walsonavich's attorney in April 2005 was merely an agreement that Mr. Bova should finally *act* on the authority that had been conferred upon him more than seven years before Ms. Walsonavich was admitted to a nursing home.

The personal statement required by Rev. Proc. 99-21 § 4(2) does not require a declaration that no one other than the taxpayer *actually* managed the taxpayer's financial affairs during the period in which the taxpayer is disabled; it requires a declaration that no one other than the taxpayer was *authorized* to manage the taxpayer's financial affairs during the period of financial disability. In the present case, Mr. Bova was authorized to manage Ms. Walsonavich's financial affairs during the entire period of her alleged financial disability. Thus, plaintiffs cannot satisfy the personal statement requirement of

[6] The Pennsylvania durable powers of attorney statute was modified in 1999 and 2000, however the relevant section allowing for "springing" powers of attorney has not changed since 1998.

Rev. Proc. 99-21 § 4(2). As a result, Ms. Walsonavich's 1996 refund claim does not qualify for relief from the three-year statute of limitations that required her claim to be filed by April 15, 2005. The claim was not filed until May 25, 2005. Therefore, the Service properly denied the claim as untimely. Neither § 6511(h) nor Rev. Proc. 99-21 allow for a suspension of the § 6511(d)(2) statute of limitations simply because Mr. Bova did not choose to exercise his authority over Ms. Walsonavich's finances any sooner than he did.

2. Plaintiffs have not produced a physician's statement that meets the requirements of § 6511(h) and Rev. Proc. 99-21.

Assuming, *arguendo*, that plaintiffs could produce a personal statement that meets to the requirements of Rev. Proc. 99-21 § 4(2), plaintiffs have still failed to produce a physician's statement that meets the requirements of the revenue procedure. Rev. Proc. 99-21 § 4(1)(a)-(e) provides that relief from the statute of limitations will only be given to untimely refund claims that have a *certified* physician's statement *attached* to the claim, in which a physician diagnoses the taxpayer's disability, describes how long it is expected to endure, and specifies the period during which the taxpayer will be unable to manage his or her finances. Ms. Walsonavich's accountants did not attach such a statement to her untimely refund claim. Instead, they attached a "Statement Regarding Timely Filing" to her amended 1996 return when it was filed on May 25, 2005. (Compl. Exhibit C, page 4.) Although the statement makes reference to Ms. Walsonavich's "medical issues", it was not authored or certified by a physician, and it provided no diagnosis, prognosis, or other indication of the period during which Ms. Walsonavich was expected to be incapable of managing her financial affairs.

Plaintiffs include with their Complaint a physician's statement dated March 19, 2007, which appears to be a statement diagnosing Ms. Walsonavich's medical condition and attesting to the fact that she was unable to manage her financial affairs during the period in which she was entitled to file a refund claim through the time of her death. (Compl. Exhibit D). However, the statement is dated even later than Ms. Walsonavich's untimely refund claim, and it does not contain the physician's certification required by Rev. Proc. 99-21 § (4)(1)(e). Neither § 6511(h) nor Rev. Proc. 99-21 provide for any exceptions to the certification requirement. Thus, even if the Court were to allow plaintiffs an opportunity to rehabilitate Ms. Walsonavich's refund claim through these proceedings, the documentation submitted to date falls short of the requirements imposed by Rev. Proc. 99-21. As a result, plaintiff is not entitled to suspend the statute of limitations under Section 6511(d)(2). Consequently, Ms. Walsonavich's 1996 refund claim was untimely, and plaintiffs are barred from recovery in this suit. The Complaint must therefore, be dismissed. *See Freeman v. United States*, 2005 WL 3132185 (S.D. Tex. 2005) (claim of financial disability without documentation required by Rev. Proc. 99-21 is insufficient to toll the statute of limitations under § 6511).

WHEREFORE, defendant respectfully requests that this motion be granted, and that plaintiff's Complaint be dismissed without prejudice.

Respectfully submitted,

October 15, 2007

s/Jeffrey R. Malo
JEFFREY R. MALO
Attorney of Record
United States Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Voice: (202) 305-7539
Fax: (202) 514-9440
Email: jeffrey.r.malo@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General

October 15, 2007

s/David Gustafson
DAVID GUSTAFSON
Chief, Court of Federal Claims Section