**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**No. 07-526 T**
**(Judge Nancy B. Firestone)**

**ALBERT BOVA and DAVID TONER,**
**CO-EXECUTORS OF THE ESTATE OF**
**MARGARET WALSONAVICH**

**Plaintiff,**

**v.**

**UNITED STATES OF AMERICA**

**Defendant**

# PLAINTIFFS' RESPONSE TO THE DEFENDANT'S MOTION TO DISMISS

The plaintiffs respond to the defendant's motion to dismiss (the "Motion") under F.R. Civ. P. 12(b) (6) as follows.

## The Standard for Considering Defendant's Motion to Dismiss

Federal Rule of Civil Procedure 12(b) (6) provides that the moving party has the burden of proving that no claim has been stated. To prevail, the movant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Moore's Federal Practice*, section 12.34[1]. This language emphasizes the limited application of Rule 12 (b) (6) as the predicate for a final dismissal of an action, a disposition that courts generally disfavor because it summarily terminates cases on their merits. *Id*. When considering such a motion, the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support her claims. *Id*.

For Rule 12(b) (6) purposes, the court must accept the plaintiffs' factual averments as true, drawing all reasonable inferences in plaintiffs' favor. The court should also construe the plaintiff's allegations liberally. *Id.*

When these standards are applied, defendant's motion must be dismissed.

## **Factual Background**

On February 2, 1998, Margaret Walsonavich executed a general power of attorney (the "Power of Attorney"). At the time she executed the Power of Attorney she was not suffering from any disability. Ms. Walsonavich executed the Power of Attorney in order to ensure that some trusted person was available to handle her affairs should she become disabled. Ms. Walsonavich selected her accountant, Albert Bova. At the time Ms. Walsonavich executed the Power of Attorney, she and Mr. Bova agreed that the Power of Attorney was to be activated only in the event that the she could not handle her affairs due to some disability. Complaint ("Compl.") at para. 7-8.

In February 2003, Ms. Walsonavich's accounting firm prepared an amended federal income tax return for the year 2001 (the "Amended Return"). The Amended Return sought a refund of approximately $99,000. For the reasons stated below, the Amended Return was not filed until May 25, 2005; forty days after the statute of limitations for filing the Amended Return would ordinarily have expired. Compl. at para. 12-13, 18.

The Amend Return was filed by Albert Bova in accordance with the agreement he and Ms. Walsonavich had reached at the time the Power of Attorney was executed. As clearly stated in the complaint, "Ms. Walsonavich and Mr. Bova agreed that the Power of Attorney was to be activated *only in the event that* she could not handle her affairs due to some disability." Compl. at 8( Emphasis added).

Unknown to Mr. Bova, commencing as early as April 2004, Ms. Walsonavich was suffering from a variety of mental impairments. In March 2005, Ms. Walsonavich was admitted to a nursing home. While there she was reported as unable to care for herself and "yelling out". Her cognitive skills and decision making ability were described as moderately impaired. Compl. at para. 15-16.



DM3\589323.1

In early April 2005, Mr. Bova and Ms. Walsonavich's attorney visited her at the nursing home and based upon their observations, concluded that it was the appropriate time for the Power of Attorney to be activated. Mr. Bova, *now* acting under the activated Power of Attorney, inspected Ms. Walsonavich's financial records, determined that the Amended Return had not been filed, and filed the Amended Return. Compl. at para. 17-18.

The Amended Return contained a statement relating in part that Ms. Walsonavich had signed the Amended Return on February 28, 2003, that she had not mailed the Amended Return, that her health was deteriorating, that she had been incapacitated between April 2003 and April 2005, that her attorney in fact commenced acting in that capacity in April 2005, and that the Amended Return be accepted as timely filed. Compl. at para. 13 and Exhibit C.

The plaintiffs' position, set forth in the complaint, is that given Ms. Walsonavich's mental condition commencing in April 2004 and the activation of the Power of Attorney in April, 2005, that the statute of limitations for filing the Amended Return was suspended during this one year period and that the Amended Return was timely filed.

## The Defendant's Theory for Dismissal

The defendant alleges that the statute of limitations for filing the Amended Return was not suspended because during the time that Ms. Walsonavich was mentally disabled, Albert Bova was authorized to manage her financial affairs. Even if that were not the case and no one was authorized to act in her behalf, the defendant argues that the plaintiffs have failed to produce a physician's statement regarding Ms. Walsonavich's medical condition.

## Internal Revenue Code Section 6511(h) Is Applicable Here and the Amended Return Was Timely Filed

In general, a taxpayer must file a refund claim within three years of the filing of the original return. Prior to 1998, there was no statutory provision for equitable tolling of the statute of limitations for any reason. In 1998, Internal Revenue Code ("IRC") section 6511 was amended to provide for tolling of the limitations period in the case of sever disability. The amendment provides that the running of the statute of limitations is



DM3\589323.1

suspended during any period that a person is "financial disabled". That term is defined as follows:

> ...an individual is financially disabled if such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

However, "...an individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters."

**No One, Including Albert Bova, Was Authorized to Act on Behalf of Margaret Walsonavich Until April 2005**

The defendant alleges that Mr. Bova was authorized to manage Ms. Walsonavich's financial matters commencing on the date that the Power of Attorney was executed and accordingly, she was not "financially disabled" as that term is defined.

In its recitation of the facts, the defendant follows the Factual Background alleged in the complaint at paragraphs 6 through 24. The defendant's recitation of the facts basically follows the chronology set out in the complaint until it reaches paragraph 7 at which point the Motion makes the following statement (ignoring paragraph 8): "Significantly, the Power of Attorney was *not* made contingent upon the occurrence of some future event, such as the incapacity of the principal." Motion at 2.

Had the Motion presented an accurate version of the facts presented in the complaint, the facts would have included the following:

"At the time the Decedent executed the power of attorney she was not suffering from any disability. The Decedent executed the power of attorney in order to ensure that some trusted person was available to handle her affairs should she become disabled. **The Decedent and Mr. Bova agreed that the power of attorney was to be activated only in the event that the Decedent could not handle her affairs due to some disability**."

Compl. at 8 (Emphasis Added).

The complaint clearly alleges that the very existence of the authority the Power of Attorney granted to Mr. Bova was contingent on the occurrence of a future event i.e. Ms. Walsonavich's inability to handle her affairs.

The defendant suggests that the Power of Attorney can only be construed to have taken effect on the date of its execution, citing 20 Pa. C.S.A. sec. 5604(a) ( "...a principal **may** provide in the power of attorney that the power shall become effective ...upon the occurrence of a specified contingency...".) The statute by its own terms is not mandatory, suggesting that other means (e.g. an oral agreement) may be used to cause a power of attorney to "spring" into existence.

The Motion also suggests that an April 2005 oral agreement between Mr. Bova and Ms. Walsonavich's attorney existed but that was "...merely an agreement that Mr. Bova should finally *act* on the authority that had been conferred upon him..." Motion at 8. There is no reference to any such agreement in the complaint. The Motion mistakenly characterizes a consultation between Mr. Bova and Ms. Walsonavich's attorney in April 2005 upon their visit to her nursing home where [they] "...concluded that it was the appropriate time for the power of attorney to be activated." Compl at 17.

The inference drawn from the complaint is clear. At the time the Power of Attorney was executed, Ms. Walsonavich wanted to handle her own affairs but at the same time she wanted to provide for a mechanism that would permit some trusted person to handle her affairs should she not be in a condition to do so. She decided on her accountant, Al Bova. M. Walsonavich and Mr. Bova agreed that Mr. Bova would have the power to act only in the event that Ms. Walsonavich could not handle her affairs due to some disability. The execution of the Power of Attorney did not confer any current power on Mr. Bova, only the prospect of a power to act if Ms. Walsonavich could not.

## **The Plaintiffs Have Produced the Statements Required by Rev. Proc. 99-21**

The defendant alleges that the plaintiffs have failed to comply with the procedural requirements of Revenue Procedure 99-21 by failing to provide the statements required by the revenue procedure. Motion at 9.

The revenue procedure states that two statements are to be submitted with a claim for refund. The first is a statement provided by the person submitting the claim for refund that no one was authorized to act on the taxpayer's behalf in financial matters during the period of the alleged suspension of the limitations period for filing the refund claim.
The second is a certified written statement by a physician regarding the nature and duration of the taxpayer's medical condition which prevented the timely filing of the refund claim.

The defendant argues that Mr. Bova's authority to act on Ms. Walsonavich's behalf existed from the time the Power of Attorney was executed and accordingly, since he was authorized to act on her behalf, the required statement can not be provided.

As stated above, no one was authorized to act on Ms. Walsonavich's behalf during the time period that the plaintiffs assert the limitations period for filing the Amended Return was suspended. As demonstrated above, Mr. Bova was not authorized to act until Ms. Walsonavich became disabled. Mr. Bova became aware of Ms. Walsonavich's disability in April 2005 at which time the Power of Attorney was activated and he commenced to act as her attorney in fact. Until April 2005, no one else was authorized to act on Ms. Walsonavich's behalf. The Amended Return shows that Ms. Walsonavich had no spouse to act on her behalf given that her filing status was "Single". The statement attached to the Amended Return describes her medical condition, her inability to act on her own behalf ("... the Taxpayer was suffering from medical issues that made it difficult for her to deal with ... her ...financial affairs.") and the activation of the Power of Attorney (In April 2005, "...individuals...beg[a]n to act in their capacity of attorney-in-fact...") thereby providing the substance of the statement required by the revenue procedure.

The defendant next argues that the plaintiffs have "...still failed to produce a physician's statement that meets the requirements of the revenue procedure." Motion at 9. Although a physician's statement was not submitted with the refund claim, a certified physician's statement was submitted to the IRS appeals office that considered the refund claim. A copy of the physician's statement which is in compliance with the revenue procedure should be part of the IRS' administrative file. A copy of the

statement provided to the IRS appeals office in Philadelphia (the original was provided directly to the appeals officer) is attached as Exhibit A.[1]

**The Defendant Has Not Met His Burden Under F. R. Civ. P. 12(b) (6)**

Federal Rule of Civil Procedure 12(b) (6) provides that the moving party has the burden of proving that no claim has been stated. To prevail, the movant must show "beyond doubt that the plaintiff can prove no set of

---

[1] Defendant's arguments regarding the plaintiffs alleged failure to comply with the revenue procedure, correctly suggests that strict compliance with the revenue procedure is not required and that the plaintiffs might cure any actual defect. ("... the documentation submitted *to date* falls short of the requirements imposed by Rev. Proc 99-21." Motion to Dismiss at 10). Indeed, if plaintiffs have not in fact complied, they have "substantially complied" with the requirements for the two statements required by the revenue procedure. See Pearce v. United States, 226 F. Supp. 702 (W.D.N.Y. 1964) (holding that failure to file for capital gains treatment due to mislaid papers was mere mistake and that papers filed late were acceptable); American Air Filter Co. v. Commissioner, 81 T.C. 709 (1983) (holding that taxpayers substantially complied by acting in accordance with election to receive minimum distributions of foreign income, and failing to file election statement due to oversight would not prevent intended election); Taylor v. Commissioner, 67 T.C. 1071 (1977) (holding that failure to file election statement for capital gains treatment will not prevent election when farmers substantially complied by using the accounting method necessary for making the election - the purpose of the election was specifically to help farmers using a certain accounting method), acq. 1979-2 C.B. 2; Hewlett Packard Co. v. Commissioner, 67 T.C. 736 (1977) (holding that acting in accordance with the election and a statement combined with a schedule substantially complies with regulation to elect accounting method - failure to consolidate information onto one statement did not prejudice IRS), acq. in result, 1979-2 C.B. 2; Columbia Iron and Metal Co. v. Commissioner, 61 T.C. 5 (1973) (holding that failure to attach resolution or statement would not defeat claim for deduction of charitable contributions when taxpayer acted in accordance with election), acq. 1979-2 C.B. 1.

facts in support of his claim [that] would entitle him to relief." *Moore's Federal Practice,* sec12.34 [1].

The plaintiffs' complaint demonstrates on its face that Albert Bova was not authorized to act on Margaret Walsonavich's behalf until the occurrence of some event; her inability to handle her affairs due to some disability. The defendant may not like the fact that this contingency was not written into the Power of Attorney, but the agreed to contingency is the fact as alleged in the complaint and that is the fact that must be accepted as true for purposes of this motion[2]. Accordingly, Ms. Walsonavich was "financially disabled" during the period April 2004 through April 2005, as alleged in the complaint, the limitations period for filing the Amended Return was suspended during this period and the Amended Return was timely filed on May 25, 2005.

The plaintiffs have also satisfied the defendant's concerns regarding the requirements of Rev. Proc. 99-21.

---

[2] At trial the plaintiffs will present testimony from Ms. Walsonavich's counsel who drafted the Power of Attorney that they disfavored the "springing" form of power of attorney described in the Motion at 8. and the reasons why the Power of Attorney was intentionally drafted without this "springing" language.

Accordingly, the defendant's motion to dismiss must be denied.

Respectfully submitted,

Date: 12 November 2007

s/Thomas W. Ostrander
Thomas W. Ostrander
Duane Morris LLP
30 South 17th Street
Philadelphia, Pennsylvania 19103
215 979 1802
215 979 1020 (Fax)

Attorneys for Plaintiffs