**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 07-526 T
(Judge Nancy B. Firestone)

---

ALBERT BOVA and DAVID TONER, CO-EXECUTORS OF THE ESTATE OF MARGARET WALSONAVICH

Plaintiffs,

v.

THE UNITED STATES

Defendant.

---

**SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

---

Pursuant to the Court's order dated December 4, 2007, defendant hereby supplements its earlier briefs in support of its motion to dismiss the Compliant under RCFC 12(b)(6). The Court inquired whether, under Pennsylvania law, it may look beyond the four corners of a written durable power of attorney to determine whether the power was limited by an oral contingency. The relevant authorities do not allow the Court to look beyond the four corners of the document. Consequently, the Court must give legal effect to the written instrument, and not plaintiffs' self-serving allegations that an "oral contingency" negated an otherwise "activated" durable power of attorney.

INTRODUCTION

Decedent executed a "General Power of Attorney", which provided that "this power of attorney *shall not be affected by* my subsequent disability ...." (Compl. Exhibit A, page 1) (emphasis added). Now, however, plaintiffs contend that the power did not become effective until decedent's subsequent disability. Plaintiffs assert that the power

was limited by an "oral agreement" that postponed "activation" of the power until the decedent became disabled. This assertion is untenable under the express language of the power, and is not supported by Pennsylvania law. As a result, plaintiffs cannot support their claim that no person was authorized to manage decedent's financial affairs during the period of decedent's alleged disability. Moreover, even if the alleged oral agreement were given legal effect, decedent's alleged disability would have "activated" the power, thereby authorizing the holder to manage decedent's financial affairs. Thus, someone *was* authorized to manage decedent's finances at all times relevant to decedent's alleged disability. Consequently, decedent was not "financially disabled" under § 6511(h), and plaintiffs are not allowed to suspend the § 6511(d)(2) three-year statute of limitations within which decedent was required to file any refund claim for the 1996 tax year.[1] Plaintiffs filed decedent's 1996 refund claim 40 days after the statute of limitations expired. Therefore, plaintiffs' claim is barred and the Complaint should be dismissed.

## SUMMARY OF THE RELEVANT FACTS

Decedent, ("Ms. Walsonavich"), executed a power of attorney on February 3, 1998, granting power to Albert Bova ("Mr. Bova") to manage her financial affairs, including "all matters pertaining to federal, state or local taxes", and providing that the power "shall not be affected by my subsequent disability. . .".[2] (Compl. ¶ 7; Compl. Exhibit A, pages 1, 3). Plaintiffs admit that there was no *written* contingency in the

---

[1] Unless otherwise noted, all references to "§" or "section" are to the Internal Revenue Code of 1986 (26 U.S.C.).

[2] A power of attorney need not be limited to authorization of an agent to act on behalf of a principal in tax matters, but may include a broad range of powers, including, for example, the ability to sell property owned by the principal. Great mischief could result if parties were allowed to assert that "oral contingencies" limited a power of attorney, after the power had been purportedly exercised by the agent named in the instrument. Third parties who relied on the power (*e.g.*, to purchase real estate from the agent) would be prejudiced by later disavowals based on unwritten contingencies, with the result that powers of attorney would be rendered unreliable and almost meaningless, if unwritten contingencies might make them invalid.

instrument which would have postponed Mr. Bova's power from becoming effective on the date it was executed. (Pl. Resp. at 8). However, plaintiffs' contend that Mr. Bova's power was limited by an oral agreement that the power would "activate" only if "decedent could not handle her affairs due to some disability." (Compl. ¶ 8; Pl. Resp. at 4).

Defendant demonstrated in its reply brief that Pennsylvania law does not recognize oral contingencies to an otherwise "activated" durable power of attorney. (Def. Reply at 4-6). Defendant's position is supported by the plain language of the Pennsylvania durable power statute, commentary by the draftsmen of the uniform act upon which the Pennsylvania statute is based, and state and federal case law that has examined whether an alleged "oral agreement" can modify the written provisions of an instrument such as a power of attorney. In light of these authorities, the Court should not recognize plaintiffs' alleged oral contingency to Mr. Bova's power over Ms. Walsonavich's finances. Mr. Bova was, at all relevant times, authorized to manage Ms. Walsonavich's financial affairs. Therefore, she was not financially disabled under § 6511(h) and plaintiffs' claim is barred by the § 6511(d)(2) statute of limitations.

## ARGUMENT

### I. The plain language of the Pennsylvania statute indicates that a power of attorney is "activated" when it is executed, unless a written contingency postpones its effective date.

The Pennsylvania statute that authorizes durable powers provides that "[t]he power conferred shall be exercisable notwithstanding the principal's subsequent disability or incapacity." 20 Pa.C.S.A. § 5604(a). Implicit in the statutory language is the fact that is explicit in this particular power, *i.e.*, that the power is exercisable *prior* to

the principal's subsequent disability or incapacity.[3] Thus, the power of attorney executed by Ms. Walsonavich was exercisable before the period during which she was alleged to be disabled. The statute also provides that, "[u]nless the power of attorney states a time of termination, it is valid notwithstanding the lapse of time *since its execution*." 20 Pa.C.S.A. § 5604(b) (emphasis added). This language indicates that a power of attorney is "activated" when it is executed, and remains active indefinitely, unless the instrument itself specifies a date or condition for its termination. Ms. Walsonavich did not provide for the termination of the power she assigned to Mr. Bova. Therefore, Mr. Bova's power was "activated" on February 3, 1998 – the date the power of attorney was executed – and remained active throughout the period of Ms. Walsonavich's alleged disability.

The Pennsylvania durable power statute allows a principal to postpone the effective date of a power of attorney by including a written contingency in the instrument that specifies a time or event that triggers the powers conferred. The statute provides, "A principal may provide *in the power of attorney* that the power shall become effective at a specified future time, or upon the occurrence of a specified contingency." 20 Pa.C.S.A. § 5604(a) (emphasis added). This means that a principal may (but is not required to) postpone the effective date of a power of attorney by identifying, *in writing*, a time or event, the occurrence of which, will "activate" the powers of the person named as the principal's agent. Ms. Walsonavich did not include any written contingency in the power she conferred upon Mr. Bova that would have postponed its effective date. If the

[3] A power (like the one at issue) that "shall not be affected by my subsequent disability" is obviously a power that is in effect *before* the disability. Plaintiff's proposed interpretation of the power virtually contradicts its express term by making the power to be radically "affected" by decedent's disability: The power, to become effective, would depend completely on that disability; it is hard to imagine a circumstance in which a power is more "affected" by a contingency than to be "activated" by it. Plaintiffs' position is thus at odds with the express terms of the power of attorney.

instrument is to remain consistent with the Pennsylvania durable power statute, it can only be read as a power that was "activated" on the date it was executed, and which remained in effect – without conditions or limitations – through the date of Ms. Walsonavich's death.

Nothing in the Pennsylvania statute allows a principal to enter into an oral agreement to establish a contingency that limits an otherwise active power of attorney. The plain language of the Pennsylvania statute requires the Court to only give legal effect to Ms. Walsonavich's written instrument. Therefore, Mr. Bova was authorized to manage Ms. Walsonavich's affairs at all times relevant to her alleged disability, and the three-year statute of limitations for filing her 1996 refund claim was not suspended by § 6511(h). As a result, Ms. Walsonavich's refund claim was untimely and plaintiffs are barred from recovering the alleged overpayment.

II. Commentary to the uniform act, upon which the Pennsylvania durable power of attorney statute is based, indicates that oral agreements are not allowed to modify the written provisions of a power of attorney.

Pennsylvania adopted a variation of the *Uniform Durable Power of Attorney Act of 1979*, drafted by the National Conference of Commissioners on Uniform State Laws. The Pennsylvania statute combined the substantive provisions of sections 1-3 of the uniform act into a single statute codified in § 5604 of the Pennsylvania consolidated statutes. Although the language varies from that used in the uniform act, the substance of the Pennsylvania statute and the uniform act is the same.[4] Unif. Durable Power of Attorney Act § 1 (1979) (*see* comment under "Action by Adopting Jurisdictions" at Pennsylvania). In their commentary to the uniform act, the Commissioners made clear

[4] See Appendix 1 of defendant's reply for a comparison of the language in the uniform act and the Pennsylvania statute, and the text of the Commissioners on Uniform State Laws commentary on sections 1 and 2 of the uniform act.

their intent that "a durable power with postponed effectiveness is permitted." Unif. Durable Power of Attorney Act § 1 (1979) (Comment). They further indicated that the way to postpone the effectiveness of a power is through a written contingency in the instrument. *Id*. They noted, "draftsmen of durable powers are not limited in their choice of words to describe the later time when the principal wishes the authority of the agent in fact to become operative." *Id*. Nothing in the uniform act or related comments suggests that the Commissioners intended principals to be allowed to modify the written terms of a power of attorney through an oral agreement.[5] The power of attorney that Ms. Walsonavich executed specifically authorized Mr. Bova to manage her finances, including "all matters pertaining to federal, state or local taxes". (Compl. ¶ 7; Compl. Exhibit A, pages 1, 3). The power did not include a written contingency that would have postponed the effective date of Mr. Bova's power beyond the date on which it was executed. Therefore, Mr. Bova was authorized to manage Ms. Walsonavich's finances as of February 3, 1998, and remained authorized to manage her financial affairs throughout the period of her alleged disability.

[5] In 2006, the Commissioners released the *Uniform Power of Attorney Act*, which superseded the *Uniform Durable Power of Attorney Act of 1979*. Section 109(a) of the 2006 act provides, "A power of attorney is *effective when executed unless the principal provides in the power of attorney that it becomes effective at a future date or upon the occurrence of a future event or contingency*." Unif. Power of Attorney Act § 109(a) (2006) (emphasis added). The 2006 act codifies "state legislative trends and collective best practices" on several issues related to powers of attorney, including the "activation of contingent powers." Unif. Power of Attorney Act (2006) (Prefatory Note). Thus, the language of the 2006 act illustrates the Commissioners' intent to codify what was already the widely accepted interpretation of the 1979 act, namely, that a durable power of attorney is "activated" when executed, *unless* its effective date is postponed by a written contingency specified in the instrument. The 2006 act has yet to be adopted by any jurisdiction.

III. Other courts have determined that the parole evidence rule prevents an alleged oral agreement from modifying the written terms of an instrument.

Courts that have addressed the question of whether an alleged oral agreement can modify the written terms of a power of attorney have concluded that only the writing can be given legal effect. In *Phillips v. Andrews*, 128 Fed. Appx. 935 (3d Cir. 2005), the U.S. Court of Appeals for the Third Circuit specifically addressed the question of whether an alleged oral agreement could be given legal effect to modify the written terms of a power of attorney that was executed under the laws of the U.S. Virgin Islands. Like Pennsylvania, the U.S. Virgin Islands based its durable power statute on the *Uniform Durable Power of Attorney Act of 1979.* The case involved a realtor who was given a power of attorney to collect insurance proceeds on behalf of a property owner. The realtor claimed that the property owner verbally authorized her to spend the proceeds on repairs to the owner's property. The owner denied that she had entered into such an oral agreement. The court ruled that "according to the parole evidence rule, we are precluded from considering the oral evidence, since it alters the authority granted in the writing." *Phillips v. Andrews*, 128 Fed. Appx. at 938.

In the *Phillips* opinion, the Third Circuit cited *Mellon Bank Corp., v. First Union Real Estate Equity and Mortgage Inv.*, 951 F.2d 1399 (3d Cir. 1991), an earlier Third Circuit decision in which the court applied Pennsylvania's parole evidence rule to hold that oral agreements could not modify the terms of a complete written contract. The Third Circuit deferred to the Supreme Court of Pennsylvania's synopsis of the parole evidence rule in *Gianni v. R. Russel & Co.*, 281 Pa. 320, 126 A. 791 (Pa. 1924). The Pennsylvania court wrote:

> Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement. *Mellon Bank Corp., v. First Union Real Estate Equity and Mortgage Inv.*, 951 F.2d at 1405 (quoting *Gianni v. Russell*, 126 A. at 792).

The Pennsylvania Supreme Court noted that the parole evidence rule applies only to writings that express a complete agreement between parties. To determine whether a writing is a complete agreement, the court established a conclusive presumption:

> [I]f [a writing] appears to be a contract, complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, *it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing*. *Id.* (emphasis added).

In the instant case, Ms. Walsonavich executed a durable power of attorney on February 3, 1998, which met the requirements of the Pennsylvania durable power statute. Plaintiffs do not allege that the absence of a written contingency in the instrument was the result of fraud or mistake. To the contrary, plaintiffs allege that written contingencies were "intentionally" excluded from the instrument. (Pl. Resp. at 8, note 2). The power was an instrument "complete within itself" that fully conferred authority to Ms. Walsonavich's agent, Mr. Bova, to act on her behalf. Nothing in the power she executed created "uncertainty as to the object or extent" of Mr. Bova's powers. But for plaintiffs' claim that Mr. Bova's power was postponed by an oral agreement with Ms. Walsonavich, there would be no question that the power of attorney was effective when executed.[6] Following the Pennsylvania Supreme Court's analysis, the writing is therefore

[6] If it is determined that a complete and valid power of attorney, such as the one executed by Ms. Walsonavich, is subject to oral contingencies, then it is difficult to imagine a set of facts in which any power of attorney would constitute a complete agreement that is beyond the scope of subsequent oral modification. Heirs or other beneficiaries to an estate would be free to challenge the actions of an agent named in a power of attorney by simply alleging that any number of oral contingencies did not occur in order to trigger the agent's power, and therefore, the actions taken by the agent were invalid.

conclusively presumed to be an integrated writing that represents "the whole engagement of the parties". Plaintiffs' claim that Ms. Walsonavich and Mr. Bova verbally agreed that his power would only "activate" if she "could not handle her affairs due to some disability" is to no effect. The Third Circuit embraced this analysis in the *Phillips* and *Mellon Bank* decisions. This Court should also endorse the Pennsylvania Supreme Court's long standing statement of Pennsylvania's parole evidence rule prohibiting oral modification of an integrated writing.

IV. <u>Plaintiffs' own allegations force the conclusion that Mr. Bova was authorized to manage Ms. Walsonavich's finances during the period of her alleged disability.</u>

Assuming, *arguendo*, that Pennsylvania law allowed the Court to look beyond the four corners of the instrument to determine if a power of attorney could be modified by an oral agreement, plaintiffs' allegations still require the Court to conclude that Mr. Bova was authorized to manage Ms. Walsonavich's financial affairs during the period of her alleged disability. Plaintiffs allege that Ms. Walsonavich and Mr. Bova had an oral agreement that his power of attorney over her finances would "activate" only if Ms. Walsonavich "could not handle her affairs due to some disability". (Compl. ¶ 8; Pl. Resp. at 4). Plaintiffs further allege that:

> Unknown to Mr. Bova, *commencing as early as April 2004*, the Decedent was suffering from Asperger's Syndrome, obessional, perseverative, tangential and circumstantial thinking, severe character pathology and a form of dementia and frontal lobe deficits (brain impairments) associated with difficulty planning or foreseeing the consequences of her actions. (Compl. ¶ 8; Compl. "Exhibit D") (emphasis added).

Thus, by plaintiffs' own account, Mr. Bova's power of attorney over Ms. Walsonavich's finances was "activated" sometime around April 2004 – the time at which Ms. Walsonavich became unable to "handle her affairs due to some disability". Assuming

plaintiffs' factual allegations are accurate, Mr. Bova did not visit Ms. Walsonavich until a full year after she began to experience symptoms of her disability. (Compl. ¶ 17). That Mr. Bova did not discover that his power over Ms. Walsonavich's finances had been activated by her alleged disability is of no consequence to the rule of § 6511(h)(2)(B), which specifically provides that "an individual shall not be treated as financially disabled during any period that such individual's spouse, *or any other person is authorized to act on behalf of such individual in financial matters.*" § 6511(h)(2)(B) (emphasis added). The statute makes no inquiry into any other person's awareness that he is authorized to act on behalf of the individual; it inquires only whether such authorization exists. Consequently, Mr. Bova was authorized to act on Ms. Walsonavich's behalf at all times during her alleged disability, and therefore, she could not have been "financially disabled" within the meaning of § 6511(h). The three-year statute of limitations under § 6511(d)(2) was not suspended by Ms. Walsonavich's alleged disability. Therefore, plaintiffs are barred from recovering Ms. Walsonavich's alleged overpayment for the 1996 tax year because her claim was filed 40 days after the statute of limitations expired.

WHEREFORE, defendant respectfully requests that the Court grant its motion to dismiss the Complaint under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted.

Respectfully submitted,

December 18, 2007

s/Jeffrey R. Malo
JEFFREY R. MALO
Attorney of Record
United States Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Voice: (202) 305-7539
Fax: (202) 514-9440
Email: jeffrey.r.malo@usdoj.gov

RICHARD T. MORRISON
Acting Assistant Attorney General

December 18, 2007

s/David Gustafson
DAVID GUSTAFSON
Chief, Court of Federal Claims Section