# In the United States Court of Federal Claims

**No. 07-526T**
**(Filed: February 13, 2008)**

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | * |
| **ALBERT BOVA and DAVID TONER, CO-EXECUTORS of the ESTATE of MARGARET WALSONAVICH,** | * **Motion to Dismiss Under RCFC 12(b)(6); Statute of Limitations Under 26 U.S.C. § 6511(d); "Financial Disability" Under 26 U.S.C. § 6511(h); Powers of Attorney Under Pennsylvania Law, 20 Pa.C.S.A. § 5604; Parol Evidence Rule Under Pennsylvania Law: Integration Versus Ambiguity.** |
| **Plaintiffs,** | * |
| **v.** | * |
| **THE UNITED STATES,** | * |
| **Defendant.** | * |
| * * * * * * * * * * * * * * * * * * * | |

*Thomas W. Ostrander,* Philadelphia, PA, for plaintiff.

*Jeffrey R. Malo,* U.S. Department of Justice, Washington, DC, with whom were *Richard T. Morrison, Acting Assistant Attorney General* and *Chief David Gustafson,* for defendant.

**O P I N I O N**

**FIRESTONE**, *Judge*.

Pending before the court is the motion of the United States ("government" or "defendant") to dismiss the complaint of the plaintiffs, Albert Bova ("Mr. Bova") and David Toner (collectively, "plaintiffs"), as co-executors of the estate of Margaret Walsonavich ("taxpayer" or "Decedent"), pursuant to Rule 12(b)(6) of the Rules of the

United States Court of Federal Claims ("RCFC") for failure to state a claim upon which relief can be granted. In their complaint, the plaintiffs allege that a tax refund claim filed on behalf of the taxpayer was erroneously denied as untimely by the Internal Revenue Service ("IRS"). In particular, the plaintiffs charge that the statute of limitations on the taxpayer's claim should have been suspended under 26 U.S.C. § 6511(h) (2001), on the grounds that the taxpayer was unable to manage her financial affairs due to her mental impairment. Under 26 U.S.C. § 6511(h), the statute of limitations for filing a claim may be suspended if (subject to certain conditions) a taxpayer is deemed "financially disabled" and no other person is authorized to act on her behalf. The plaintiffs acknowledge that prior to her disability the taxpayer executed a durable power of attorney authorizing Mr. Bova to act on her behalf. However, the plaintiffs assert that, pursuant to an oral agreement between Mr. Bova and the taxpayer, the power of attorney was not to be "activated" until the taxpayer's disability became "apparent" to Mr. Bova. According to the plaintiffs, the taxpayer's disability did not become apparent to Mr. Bova until as much as a year after the onset of her disability.

The government has moved to dismiss the suit on the grounds that, because someone was authorized to act on the taxpayer's behalf at all times during her disability, the "financially disabled" exception to the limitations period in 26 U.S.C. § 6511(h) does not apply in this case, and therefore the taxpayer's refund claim is barred by the three-year statute of limitations period prescribed by 26 U.S.C. § 6511(d)(2)(A) (2001). Specifically,

the government contends that under the durable power of attorney signed by the taxpayer, Mr. Bova was authorized to act on the taxpayer's behalf during the period when she was financially disabled, and therefore the taxpayer is not entitled to a suspension of the statute of limitations. The government contends that Mr. Bova's alleged oral agreement with the taxpayer regarding "activation" of the power of attorney may not be considered, citing the Pennsylvania durable powers of attorney statute, 20 Pa.C.S.A. § 5604 (West 1998),[1] under which any contingency postponing the effectiveness of a power of attorney must be set forth in writing "in the power of attorney" instrument itself. Here, it is not disputed that the power of attorney does not contain any such written contingency. Because the express terms of the power of attorney instrument here authorized Mr. Bova to act for the taxpayer both before and after she became disabled, the government argues, the court may not consider the plaintiffs' allegation that a separate oral agreement made the power of attorney contingent on the taxpayer becoming disabled. In support of its position, the government cites Pennsylvania law regarding the parol evidence rule, which bars consideration of evidence of an oral agreement which directly contradicts the plain terms of a written agreement.

As discussed in more detail below, the government's motion to dismiss is **GRANTED**.

---

[1]This statute was modified in 1999 and 2000, but the relevant language has not changed since the statute was amended in 1992. See 20 Pa.C.S.A. § 5604 (West 2005).

## BACKGROUND

The background facts are taken from the complaint and the exhibits filed by the plaintiffs. For purposes of this motion to dismiss, the facts alleged by the plaintiffs are assumed to be true.

On or about February 3, 1998, the taxpayer executed a "General Power of Attorney" naming her accountant, Mr. Bova, as her attorney-in-fact. Compl. ¶ 7, Ex. A. At that time, the plaintiffs allege, the taxpayer was seventy-seven years old, in good health, and not suffering from any disability. Id. at ¶ ¶ 8-9. The document states, in relevant part,

> I, MARGARET WALSONAVICH, hereby appoint ALBERT J. BOVA attorney-in-fact . . . for me and on my behalf and hereby state that this power shall not be affected by my subsequent disability or incapacity:
>
> To exercise any power or take any action on my behalf, as fully and completely as I could do myself, which my attorney in my attorney's sole discretion believes to be in my best interest, including, without being limited to, the powers and actions hereinafter described; . . .
>
> To appear for me . . . in all matters pertaining to federal, state or local taxes; . . . to execute income . . . tax returns and . . . claims for refund, . . . and consents extending the statutory period for assessment or collection of taxes; . . . and for these purposes to employ counsel and accountants;
>
> . . . I hereby ratify and confirm all that my attorney or substitutes shall do by virtue of this power of attorney. IN WITNESS WHEREOF, I have signed my name this 3rd day of February, 1998.

Id. at Ex. A. The document was signed by a witness and notarized. Id. The written agreement did not identify any contingencies. However, the plaintiffs allege that the taxpayer and Mr. Bova orally "agreed that the power of attorney was to be activated only in the event that the Decedent could not handle her affairs due to some disability," rather than being activated immediately upon signing. Id. at ¶ 8.

The taxpayer timely filed her own federal income tax return for 2001 ("2001 return") on or about April 15, 2002, reporting a net operating loss of $221,957. Id. at ¶ 10; Ex. B ("Net Operating Loss Worksheet," 29:28). In February 2003, the taxpayer's accounting firm prepared an amended 1996 tax return, Form 1040X, carrying back the net operating loss from 2001 to the tax year 1996 and claiming a refund of $99,583.00 ("refund claim"). Id. at ¶ ¶ 12-13, Ex. C. However, the accounting firm did not file the refund claim at that time but rather gave it to the taxpayer for filing. Id. at ¶ 18. The taxpayer signed the return on February 28, 2003, but did not file it. Id. at Ex. C ("Statement Regarding Timely Filing").

According to the plaintiffs, as early as April 2004, the taxpayer "was suffering from Asperger's Syndrome, obsessional, perseverative, tangential and circumstantial thinking, severe character pathology and a form of dementia and frontal lobe deficits (brain impairments) associated with difficulty planning or foreseeing the consequences of her actions." Compl. ¶ 15, Ex. D. Nearly a year later, on March 3, 2005, the taxpayer "was admitted to the hospital complaining of weakness, confusion and shortness of breath." Id. at ¶ 16 (internal quotation omitted). While in the hospital, she was diagnosed with cognitive disorder and Asperger's Syndrome and was reported to be suffering from "some sort of anxiety think disorder." Id. (internal quotation omitted). She was discharged from the hospital on March 15, 2005, but several hours later she was "found on the floor of her home in a confused state[,] . . . taken to the hospital emergency room and admitted to a

nursing home," where she was "reported to be disoriented and confused at times, forgetful, dizzy and short of breath at rest" and, later, "unable to care for herself and yelling out," with "moderately impaired" cognitive skills and decision-making ability. Id. (internal quotations omitted).

In early April 2005, approximately a year after the plaintiffs allege the taxpayer's disability began and a month after she was admitted to the nursing home, both plaintiffs visited the taxpayer at the nursing home. Id. at ¶ 17. The plaintiffs claim that at that time, "based upon their observations of the [taxpayer]," they "concluded that it was the appropriate time for the power of attorney to be activated" under the oral agreement they had established with the taxpayer. Id. Accordingly, Mr. Bova had the taxpayer's financial records, which were in a "state of disarray," secured from her apartment and discovered the unfiled refund claim. Id. at ¶ 18. On May 25, 2005, three years and forty days after the taxpayer's 2001 return had been filed, Mr. Bova filed the taxpayer's refund claim. Id. The "Statement Regarding Timely Filing" ("Statement") accompanying the claim stated that neither the taxpayer's accounting firm nor her attorneys-in-fact were "aware of the severity of the Taxpayer's medical condition" or "her related inability to properly conduct her financial affairs" until April 2005, when her condition had deteriorated to the point where she required hospitalization. Id. at Ex. C. The Statement further indicated that

> [i]n April 2005, after being hospitalized, the Taxpayer contacted the individuals who possess a general power of attorney to act on the Taxpayer's behalf relative

> to her financial affairs. It was at that time that the Taxpayer, following the advice of her doctor, agreed that the individuals should begin to act in their capacity of attorneys-in-fact for the Taxpayer.

Id.

The IRS denied the refund claim in a letter dated July 15, 2005, stating: "We can't allow a claim for credit since you filed your claim more than 3 years after the due date for the tax return which established the carryback." Id. at ¶ 21, Ex. E. The letter stated that the taxpayer should "see if you qualify for an exception provided by law; for example, you were 'financially disabled,'" and appeal the decision if appropriate. Id.

The taxpayer died on February 4, 2006, at eighty-four years of age.[2] Id. at ¶ 22, Ex. D. She was never married. Id. at ¶ 21. After her death, the plaintiffs were appointed co-executors of her estate. Id. at ¶ 23. The plaintiffs allege that, on June 28, 2006, they filed a protest of the IRS' denial of the refund claim but received no response. Id. at ¶ 24.

The plaintiffs' attorneys' office provided the taxpayer's medical records to psychiatrist Robert M. Toborowsky, M.D., who reviewed them for the purpose of determining whether the taxpayer had been "'Financially Disabled' as defined by the relevant statute" between April 15, 2002, and April 6, 2005.[3] Id. at Ex. D. In a report

---

[2]Either this or the allegation that the taxpayer was seventy-seven on February 3, 1998, above, is off by one year. The physician's report in Ex. D claimed that the death certificate stated she was eighty-four when she died. Compl. Ex. D.

[3]For purposes of its motion to dismiss, the government "does not question that [the taxpayer] suffered from one or more medical conditions that prevented her from managing her financial affairs during the final years of her life." Def.'s Mot. 7. Instead, the government contends that Mr. Bova was authorized to act on her behalf throughout that time. Id.

dated March 19, 2007, Dr. Toborowsky stated:

> [I]t is my opinion with a reasonable degree of medical and psychiatric certainty that as a result of the combined effect of her physical and mental impairments Ms. Walsonavich lacked sufficient capacity to make responsible decisions concerning her financial affairs continuously during at least the twelve month period prior to April 6, 2005.
>
> More specifically, it is my opinion that during the relevant time frame she was suffering from and, as defined by the Internal Revenue Code, "financially disabled" by Asperger's Syndrome, obsessional, perseverative, tangential and circumstantial thinking, severe character pathology, and a form of dementia and frontal lobe deficits (brain impairments) associated with difficulty planning or foreseeing the consequences of her actions. Moreover, in their aggregate these psychiatric conditions and neurocognitive deficits are the types of ailments that would preclude her from managing her financial and other affairs.

Id.

The plaintiffs filed a complaint in this court on July 13, 2007, seeking the claimed refund amount of $99,583.00, plus applicable interest, costs, and attorney's fees. The plaintiffs contend that they are entitled to this amount because the statute of limitations for filing such claims should have been suspended during the period after the taxpayer became financially disabled but before Mr. Bova discovered her disability, "activated" his power of attorney as he and the taxpayer had orally agreed he should do, and filed the refund claim on her behalf.

On October 15, 2007, the government moved to dismiss the complaint pursuant to RCFC 12(b)(6), on the ground that the complaint fails to state a claim upon which relief can be granted. Specifically, the government argues that the "financially disabled" exception to the statute of limitations does not suspend the statute of limitations where, as

here, another person was authorized to act on behalf of the taxpayer pursuant to a power of attorney. The government argues that the court may not look beyond the four corners of the facially unambiguous, written durable power of attorney in this case to consider an alleged oral agreement that the power of attorney was contingent on the taxpayer becoming disabled. Thus, the government argues, the refund claim was untimely filed and the suit should be dismissed.

Supplemental briefing was completed on December 18, 2007, and oral argument was held on February 4, 2008.

## DISCUSSION

### I. Standard of Review

In considering a motion under RCFC 12(b)(6) for failure to state a claim upon which relief can be granted, "[t]he court must determine 'whether the claimant is entitled to offer evidence to support the claims,' not whether the claimant will ultimately prevail." Chapman Law Firm Co. v. Greenleaf Const. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). "In doing so, the court 'must accept as true all factual allegations in the complaint[] and . . . indulge all reasonable inferences in favor of the non-movant.'" Id. (quoting Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001)); see also Levine v. United States, 453 F.3d 1348, 1350 (Fed. Cir. 2006) (court must draw "all well-pleaded factual inferences in favor of the complainant"). Moreover, "'[u]nless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief,' the complaint should not be dismissed." Id. (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also United Pac. Ins. Co. v. United States, 464 F.3d 1325, 1327 (Fed. Cir. 2006) (a 12(b)(6) motion "is appropriate when the facts asserted by the plaintiff do not entitle him to a legal remedy"). Thus, "[a] dismissal for failure to state a claim . . . is a decision on the merits which focuses on whether the complaint contains allegations that, if proven, are sufficient to entitle a party to relief." Gould, Inc. v. United States, 67 F.3d 925, 929 (Fed. Cir. 1995).

## II. The Plaintiffs' Claim Is Untimely Because the Power of Attorney Executed by the Taxpayer Authorized Mr. Bova to Act on Her Behalf at All Times During Her Disability, Precluding Suspension of the Statute of Limitations.

As noted above, the government has moved to dismiss the plaintiffs' complaint on the grounds that the plaintiffs' claim for refund is barred by the statute of limitations set forth in 26 U.S.C. § 6511(d)(2)(A). Specifically, the government argues that Mr. Bova was authorized to manage the taxpayer's financial affairs beginning on February 3, 1998, when the taxpayer executed a durable power of attorney, and extending through the period of her alleged financial disability, thereby cancelling any potential suspension of the statute of limitations in accordance with 26 U.S.C. § 6511(h). The government argues that, as a matter of law, the alleged oral agreement making Mr. Bova's power of attorney contingent upon the taxpayer's future disability may not be considered because it contradicts the terms of the facially unambiguous, written durable power of attorney

instrument. Thus, because there was never a time when the taxpayer was financially disabled but no one was authorized to act on her behalf, the government contends, the statute of limitations was never suspended.[4]

In response, the plaintiffs argue that, though the taxpayer became disabled as early as April 2004, the power of attorney she executed was not "activated" until after Mr. Bova became aware of her disability in early April 2005, until which time "no one was authorized to act on her behalf in financial matters." Compl. ¶ 20. The plaintiffs argue that the court may consider oral agreements that have not been incorporated into a written power of attorney instrument, based on their interpretation of the Pennsylvania durable powers of attorney statute, 20 Pa.C.S.A. § 5604, and cases discussing the parol evidence rule. The plaintiffs contend that the written agreement in this case is not an integrated writing because it does not contain an integration clause or an effective date and because of the circumstances surrounding the alleged oral agreement delaying its effectiveness. Accordingly, the plaintiffs argue that the alleged oral agreement between the taxpayer and

[4]In its motion to dismiss, the government also argued that the plaintiffs failed to produce a certified physician's statement regarding the taxpayer's financial disability as required by 26 U.S.C. § 6511(h) and Revenue Procedure ("Rev. Proc.") 99-21 §§ 4(1)(a)-(e). Def.'s Mot. 9. In their response brief, the plaintiffs alleged that a certified physician's statement by Dr. Toborowsky, dated April 13, 2007, and stating that the taxpayer's "physical impairment as described in my [March 19, 2007] report lasted continuously during at least the twelve-month period prior to April 6, 2005," was "submitted to the IRS appeals office [in Philadelphia] that considered the refund claim." Pls.' Resp. 7-8, Ex. A ("Certification of Physician"). This allegation and accompanying documentation was filed outside of the pleadings, but the government acknowledged in its reply brief that the "substance" of the certified physician's statement requirement was "completed" by the plaintiffs in their response brief. Def.'s Reply 3.

Mr. Bova may be admitted to show that Mr. Bova's authority to act on the taxpayer's behalf arose only after Mr. Bova became aware that the taxpayer was unable to handle her affairs due to her disability, which did not occur until early April 2005.

For the reasons discussed below, the court agrees with the government that the statute of limitations on filing the refund claim could not be suspended because Mr. Bova became authorized to act on the taxpayer's behalf immediately upon the execution of the written durable power of attorney on February 3, 1998, though he did not choose to exercise that authority until many years later.

### A. The Meaning of "Financially Disabled" Under 26 U.S.C. § 6511

According to 26 U.S.C. § 6511(d)(2)(A), the statute of limitations for filing a refund claim relating to a net operating loss carryback is three years from the due date for filing the return,[5,6] absent a suspension of the running of the statute of limitations under § 26 U.S.C. § 6511(h)(1), which provides: "In the case of an individual, the running of the period[ of limitation] . . . shall be suspended during any period of such individual's life

---

[5]26 U.S.C. § 6511(d)(2)(A) provides in relevant part:

> "If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback . . . , the period [of limitation] shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss . . . which results in such carryback . . . ."

[6]The taxpayer was entitled to carry back the net operating loss incurred in 2001 up to five years, to and including 1996. Def.'s Mot. 4 (citing 26 U.S.C. § 172(b)(1)(H)).

that such individual is financially disabled." In turn, 26 U.S.C. § 6511(h)(2)(A) defines an individual as "financially disabled" if

> such individual is unable to manage his financial affairs by reason of a medically determinable physical or mental impairment of the individual which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. An individual shall not be considered to have such an impairment unless proof of the existence thereof is furnished in such form and manner as the Secretary may require.

Rev. Proc. 99-21 sets forth in detail the "form and manner" in which proof of financial disability must be provided. However, 26 U.S.C. § 6511(h)(2)(B) provides that "[a]n individual shall not be treated as financially disabled during any period that such individual's spouse or any other person is authorized to act on behalf of such individual in financial matters." (emphasis added).

In this case, the relevant tax return was filed on April 15, 2002, so the three-year statute of limitations in 26 U.S.C. § 6511(d)(2)(A) would have expired on April 15, 2005, forty days before the taxpayer's claim was filed in this case, unless the limitations period could have been suspended under 26 U.S.C. § 6511(h).

**B. No Contingency Was Stated in the Written Power of Attorney, So Under 20 Pa.C.S.A. § 5604(a), Mr. Bova's Authority to Act on the Taxpayer's Behalf Was Effective Immediately Upon Execution.**

Given the plain language of the governing statute, 20 Pa.C.S.A. § 5604(a), the court agrees with the government that the court should not give consideration to any oral agreement regarding a delayed "activation" of the power of attorney. In 1998, when the power of attorney at issue in this case was executed, the Pennsylvania statute governing

durable powers of attorney, 20 Pa.C.S.A. § 5604(a), provided that

> [a] durable power of attorney is a power of attorney by which a principal designates another his attorney-in-fact[7] in writing. The authority conferred shall be exercisable notwithstanding the principal's subsequent disability or incapacity. A principal may provide in the power of attorney that the power shall become effective at a specified future time or upon the occurrence of a specified contingency, including the disability or incapacity of the principal.

(emphasis added). Thus, Pennsylvania statute provides for durable powers of attorney that are immediately effective and for powers of attorney that are made contingent upon the occurrence of a future event such as the principal becoming disabled. Id.

It is not disputed that the power of attorney instrument in the present case, executed on February 3, 1998, did not provide for any contingency in its written terms.[8] Instead, the power of attorney stated, "I hereby appoint ALBERT J. BOVA attorney-in-fact . . . for me and on my behalf and hereby state that this power of attorney shall not be affected by my subsequent disability or incapacity." Compl. Ex. A (emphasis added).

The court agrees with the government that the statutory language of 20 Pa.C.S.A. § 5604(a) precludes consideration of contingencies not "provide[d] in the power of attorney," (emphasis added) – meaning "in the written instrument." The plaintiffs argue

---

[7]In 1999, the term "attorney-in-fact" was changed to "agent" throughout 20 Pa.C.S.A. § 5604; otherwise, 20 Pa.C.S.A. § 5604(a) has remained the same since 1992. 20 Pa.C.S.A. § 5604 (West 2005).

[8]The plaintiffs alleged in their response brief that "[a]t trial the plaintiffs will present testimony from [the taxpayer's] counsel who drafted the Power of Attorney that they disfavored the 'springing' form of power of attorney . . . and the reasons why the Power of Attorney was intentionally drafted without this 'springing' language." Pls.' Resp. 8, n.2.

that because the statute provides that a principal "may" provide for contingencies in the instrument, the statute implies that the principal "may" also provide for contingencies outside of the instrument. The plaintiffs' reading of the word "may" is overly strained. It is clear from the context of the statute, which defines and distinguishes the various sorts of powers of attorney that may be drafted, that the word "may" in 20 Pa.C.S.A. § 5604(a) simply makes the statute discretionary as to whether contingencies may be included at all in the power of attorney, not whether such contingencies may or may not be in writing. The statute declares that durable powers of attorney are to be set forth "in writing." The "power of attorney" contemplated two sentences later in allowing for contingencies "in the power of attorney" refers back to the same designations of power "in writing" described in the first sentence of the provision. The provision indicates that such powers "shall be exercisable notwithstanding the principal's subsequent disability or incapacity" unless a "specified contingency" to the contrary is included "in the power of attorney." 20 Pa.C.S.A. § 5604(a). Indeed, this is the only reading that gives proper effect to the presumption, laid out in 20 Pa.C.S.A. § 5601.1, that "[u]nless specifically provided otherwise in the power of attorney, all powers of attorney shall be durable as provided in [20 Pa.C.S.A. §] 5604." (emphasis added).

Thus, under the plain language of the Pennsylvania powers of attorney statute, powers of attorney are immediately effective and may be exercised immediately unless a term to the contrary is stated in the written document. If one elects to include a

contingency it must be part of the instrument; the court may not consider contingencies that are not made part of the written power of attorney. A wide range of options exists for drafting powers of attorney to capture the particular circumstances and intentions of people designating others to act on their behalf. The court cannot skirt the Pennsylvania statutory scheme because those drafting the instrument in this case failed to take advantage of that flexibility. Because there was no written contingency in this case, the subject power of attorney became effective immediately upon signing and was in effect during the entire period of the taxpayer's financial disability. Accordingly, the plaintiffs cannot state a claim for an extension of the statute of limitations based on "financial disability," and the case must be dismissed.

### C. The Terms of the Alleged Oral Agreement Contradict the Terms of the Written Power of Attorney, So Under the Parol Evidence Rule in Pennsylvania, the Oral Agreement May Not Be Considered.

Though, as discussed above, 20 Pa.C.S.A. § 5604(a) precludes the plaintiffs' claim in this case, the court notes that consideration of the alleged oral agreement would be barred under Pennsylvania's parol evidence rule in any case. The plaintiffs urge that dismissal is not appropriate because the power of attorney document in this case is not an integrated writing and that therefore the court must allow them to prove the existence of the alleged oral agreement identified in their complaint. However, the court finds that the written power of attorney in this case is an integrated writing, precluding consideration of

the alleged oral agreement to alter its terms by making it effective only after the taxpayer became disabled and Mr. Bova learned of her disability.

In Pennsylvania, "[t]he parol evidence rule states that, absent fraud, accident, or mistake, parol evidence of a prior or contemporaneous oral agreement is not admissible to alter, vary, modify, or contradict terms of a contract which has been reduced to an integrated written instrument."[9] Kehr Packages, Inc. v. Fidelity Bank, Nat. Ass'n, 710 A.2d 1169, 1172 (Pa. Super. 1998). Before admitting parol evidence of an oral agreement, therefore, the court must first determine that the writing is not integrated, meaning it does not "represent[] a final and complete expression of the parties' agreement." Id. at 1173. The plaintiffs urge that the power of attorney document in this case is not an integrated writing, pointing to the ambiguity in the facts surrounding the execution of the document, namely the alleged oral agreement itself, and to the lack of an integration clause or an effective date in the document.

The court finds the plaintiffs' argument regarding integration unpersuasive. First, the plaintiffs contend that the circumstances surrounding the execution of the written power of attorney, particularly the existence of the alleged oral agreement itself, indicate that the written agreement is not integrated. The plaintiffs cite cases discussing the

---

[9]The rule has been applied to power of attorney instruments. See Westport Nat'l. Bank v. Karsnak, 61 Pa. D. & C.2d 564, 569 (Ct. of Common Pleas of Pa. 1973) (applying the parol evidence rule to block evidence of an oral agreement that conflicted with the written terms of a power of attorney).

admissibility of extrinsic evidence to clarify an ambiguity in the meaning of a writing, "irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." In re Herr's Estate, 161 A.2d 32, 34 (Pa. 1960); see also In re Gerety's Estate, 46 A.2d 250 (Pa. 1946). The court finds that the Pennsylvania cases cited by the plaintiffs have no bearing on the question of whether the document is integrated. As the Third Circuit noted in Mellon Bank v. Aetna Business Credit, Inc., 619 F.2d 1001, 1010 n.9 (3d Cir. 1980), discussing Pennsylvania law,

> this issue of ambiguity [of the written contract] must be carefully distinguished from the issue of "integration" which arises when evidence is introduced to vary or add to the unambiguous written terms of a contract on the grounds that the evidence is admissible because the written contract is not fully integrated. The issue becomes whether the proffered evidence is extrinsic to the integrated written contract, and thus inadmissible, or whether the proffered evidence is part and parcel of the entire contract of which the written document is only a part.

(emphasis added). Because the plaintiffs here are arguing that the written document was only a part of the entire agreement between the taxpayer and Mr. Bova, of which the alleged oral agreement comprised the other part, the relevant analysis is whether the document is integrated.[10]

---

[10]The plaintiffs also argue that, even if the document is found to be integrated, parol evidence of the circumstances surrounding the execution of the document, including the alleged oral agreement, may be introduced to clarify ambiguous terms, even where the ambiguity arises from collateral or extrinsic circumstances. See e.g., In re Herr's Estate, 161 A.2d at 34 (Pa. 1960); In re Gerety's Estate, 46 A.2d 250 (Pa. 1946). The court rejects this argument. This is not a case where the plaintiffs are contesting the interpretation of a particular, ambiguous term in the document – the precise meaning of the phrase "disability or incapacity" in the written instrument, for example – nor would the admission of the alleged oral agreement merely "clarify" an ambiguity. Instead, the plaintiffs here seek to introduce evidence of the alleged oral

As the Third Circuit further noted in Mellon Bank v. Aetna, "it may be asserted that Pennsylvania courts employ a strict 'four corners' approach to integration," in contrast to the issue of ambiguity on which courts have been more liberal in admitting extrinsic evidence. Id. Thus,

> "[w]here parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract, . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence."[11]

Mellon Bank Corp. v. First Union Real Estate Equity & Mortg., 951 F.2d 1399, 1405 (3d Cir. 1991) (emphasis added) (quoting Gianni v. Russel & Co., 281 Pa. 320, 323 (1924)); see also Universal Film Exchanges, Inc. v. Viking Theatre Corp., 400 Pa. 27, 35 (1960); Gianni, 281 Pa. at 323 (1924) ("[T]o determine whether [the writing] is [integrated] or not the writing will be looked at, and if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to

---

agreement to show that the written agreement was only intended to be part of the entire agreement, that the oral agreement comprised another part, and that the terms of the oral agreement, which directly contradict the terms of the written agreement, as discussed below, should therefore be considered by the court. As a result, the relevant inquiry is the threshold question of whether the document is integrated, and the inquiry is limited to the four corners of the document, as discussed below. Cf. Universal Film Exchs., Inc. v. Viking Theatre Corp., 400 Pa. 27, 42 (1960) ("It is true that where a contract is ambiguous as to a particular provision, parol evidence is admissible, but it is admissible merely to resolve that particular ambiguity. A party may not create an ambiguity for the purpose of opening up an entire contract to parol evidence." (internal citations omitted)).

[11]The plaintiffs here do not allege fraud, mistake, or accident.

the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." (emphasis added) (internal quotation omitted)). In other words, under Pennsylvania's strict construction regarding integration, the court may not look beyond the four corners of the document to consider extrinsic circumstances – such as the alleged existence of the oral agreement or the circumstances surrounding the execution of the document – in determining whether the document was intended to be integrated.[12]

Turning instead to the terms of the written document, the court finds that the document gives no indication that it was not intended to be integrated. As an initial matter, contrary to the plaintiffs' assertion, the lack of an integration clause is not dispositive as to the integration of a document. See, e.g., Kehr, 710 A.2d at 1173 ("[A]lthough the presence of an integration clause within an agreement makes the parol

[12]At oral argument, the plaintiffs' counsel argued by way of example that he currently has a power of attorney like the one at issue in this case for his father but that he does not act on it, in accordance with an understanding he has with his father. Leaving aside the policy concerns with allowing written agreements to be subject to such unwritten understandings, the court notes that such (arguably) voluntary forbearance is not the focus of the "financially disabled" inquiry laid out in the tax code. As the government correctly argues, under 26 U.S.C. § 6511(h)(2)(B), the relevant question is whether any person was "authorized to act on behalf of [the taxpayer] in financial matters," (emphasis added), not whether the authorized person actually took such action. The statute is not concerned with whether the taxpayer's affairs were actually managed, nor whether they were managed competently, but rather whether someone had been given the authority to act. One may certainly possess the authority conferred by a power of attorney without implementing, exercising, or acting on that power. Here, under the terms of the written instrument executed by the taxpayer, it was in Mr. Bova's discretion to decide when and how to implement his power of attorney on her behalf, but he possessed the authority to do so at all times after it was executed. The fact that Mr. Bova waited until at least a year after the taxpayer became unable to handle her affairs due to her disability to exercise his authority on her behalf is immaterial to the inquiry under 26 U.S.C. § 6511(h)(2)(B).

evidence rule particularly applicable, its absence does not automatically subject the written agreement to parol evidence." (citations omitted)); Gemini Equipment Co. v. Pennsy Supply, Inc., 407 Pa. Super. 404, 412-13 (1991) (barring evidence of alleged oral agreement to vary written agreement because writing was integrated despite lack of integration clause). Thus, the lack of an integration clause in this case does not suggest a lack of integration based on which parol evidence could be considered.

More importantly, the court is not persuaded by the plaintiffs' charge that the lack of a specific effective date suggests that the document is not integrated. In the landmark case discussing the parol evidence rule in Pennsylvania, Gianni v. Russel & Co., the Pennsylvania Supreme Court found that "where the cause of action rests entirely on an alleged oral understanding concerning a subject which is dealt with in a written contract it is presumed that the writing was intended to set forth the entire agreement as to that particular subject." 281 Pa. at 324 (emphasis added), quoted in Kehr, 710 A.2d at 1174. Here, the written term, executed by the taxpayer, stating "I, MARGARET WALSONAVICH, hereby appoint ALBERT J. BOVA attorney-in-fact . . . for me and on my behalf and hereby state that this power of attorney shall not be affected by my subsequent disability or incapacity," deals directly with the subject of the effectiveness of the document. First, the phrase "I . . . hereby appoint" suggests that the appointment of Mr. Bova as attorney-in-fact is effective upon execution of the document; "hereby" denotes immediacy, indicating that the document itself conveys the appointment of power

of attorney to Mr. Bova. In addition, the term in question is not simply an "effective date" as the plaintiffs suggest, but rather the effect of the taxpayer's subsequent disability on the effectiveness of the document, and in that regard the written power of attorney states in no uncertain terms that "this power of attorney shall not be affected by my subsequent disability or incapacity." (emphasis added). In other words, the document states unequivocally that Mr. Bova's power was to be unaffected by the taxpayer's subsequent disability. Thus, by its terms, the power of attorney instrument expressly deals with the subject of the effect of the taxpayer's disability, providing that the power was in effect both before and after the taxpayer's disability or incapacity. Therefore, the document is integrated with respect to that question and an oral agreement concerning it may not be considered. Gianni, 281 Pa. at 324.

Indeed, consideration of parol evidence to alter the statement regarding disability in the power of attorney would also violate the equally well-settled principle in Pennsylvania law that critical aspects of any agreement must be included in the document itself. Pennsylvania courts have held that "[i]f the [plaintiffs] intended to rely on what they now contend to be a centrally important representation conveyed by [the other party to the agreement], then the [plaintiffs] should have insisted that the representation be set forth in their integrated written agreement." 1726 Cherry St. P'ship v. Bell, 439 Pa. Super. 141, 155 (1995) (emphasis added); see also Kehr, 710 A.2d at 1174 ("[I]t is well established that parol evidence of a contemporaneous oral agreement is inadmissible if

the subject of such agreement would naturally and normally have been included in the writing between the parties." (citing Gemini Equipment, 407 Pa. Super. at 414 ("[P]arol evidence is not admissible to show an agreement which normally is found in the written instrument.")). Thus, consistent with 20 Pa.C.S.A. § 5604(a), the parol evidence rule in Pennsylvania dictates that terms as critically important to an agreement as a contingency or delay in its effectiveness must be included in the written document, and the court finds that the written document here is integrated with regard to that subject.[13]

Having concluded, therefore, that the written power of attorney was a full and complete representation of the terms of the taxpayer's agreement with Mr. Bova, the

---

[13]The plaintiffs argue in addition that Pennsylvania law recognizes an exception to the parol evidence rule where parol testimony is used to prove that the written agreement – even if it is integrated – did not come into existence at all because a condition precedent to its existence never occurred. See, e.g., Fountain Hill Millwork Bldg. Supply Co. v. Belzel, 402 Pa. Super. 553, 560 (1991). The plaintiffs charge that, in this case, the oral agreement between Mr. Bova and the taxpayer provided that the power of attorney would not become operative until the taxpayer became disabled and her disability became "apparent" to Mr. Bova, and therefore under the condition precedent exception to the parol evidence rule, the court must allow the plaintiffs to present testimony regarding the alleged oral agreement.

The court rejects the plaintiffs' condition precedent argument. While the court recognizes that Pennsylvania law generally allows parol evidence to show the existence of a condition precedent to an agreement, the court also recognizes that Pennsylvania law does not allow it to consider parol evidence that contradicts the terms of an unambiguous written power of attorney, as discussed above. Thus, this court must find a way to reconcile these seemingly conflicting precedents. In the absence of any clear Pennsylvania law on the subject, the court concludes that the condition precedent exception to the parol evidence rule does not extend to cases where, as here, the alleged condition precedent contradicts or negates the terms of an unambiguous written power of attorney. This view is consistent with the view set forth in treatises discussing parol evidence and conditions precedent. See, e.g., 29A Am. Jur. 2d Evidence 1113 ("Parol evidence may not be used to show a condition precedent where such condition contradicts, varies, or negates the terms of written agreement, unless such terms are ambiguous." (internal citations omitted)).

court agrees with the government that evidence of an oral agreement contradicting the terms of the integrated document may not be considered. In contrast to the alleged oral agreement that Mr. Bova's authority was effective only after he became aware of the taxpayer's disability, the written power of attorney states unequivocally that Mr. Bova's power "shall not be affected by [the taxpayer's] subsequent disability or incapacity." Thus, this is not a case where the alleged contingency to the existence of the power of attorney is not addressed in the written instrument. To the contrary, this is a case where an express term in the power of attorney directly contradicts the terms of the alleged oral agreement: rather than becoming operational only after the taxpayer's disability, the written instrument itself states that the taxpayer's subsequent disability shall have no effect on its operation. Where, as here, the writing is integrated and the alleged oral agreement is intended to specifically contradict the written instrument, the parol evidence will not be considered. See, e.g., Kehr, 710 A.2d at 1173-75. Therefore, the court cannot consider the alleged oral agreement the plaintiffs propose to introduce at trial.

As noted above, Pennsylvania statute, 20 Pa.C.S.A. § 5604(a), controls the case, barring consideration of a term making the power of attorney contingent upon the taxpayer's disability if it is not included in the written document. However, as shown by the foregoing discussion, the express terms of the written power of attorney also preclude consideration of the alleged oral agreement to vary or contradict the written terms under Pennsylvania's parol evidence rule. In either case, as a matter of law, the power of

attorney by its terms precludes the granting of an extension of the refund claim filing deadline.[14]

## CONCLUSION

In conclusion, the government's motion to dismiss must be granted. It is not disputed that the taxpayer did not file her return within the three-year statute of limitations in 26 U.S.C. § 6511(d)(2)(A). It is also clear that the taxpayer was not entitled to an extension of the statute of limitations based on "financial disability," because the power of attorney executed by the taxpayer in 1998 authorized Mr. Bova to act on the taxpayer's behalf during the entire period of her financial disability, and, as a matter of law, the alleged oral agreement to the contrary may not be considered. Therefore, under 26 U.S.C. § 6511(h)(2)(B), the taxpayer could not be considered "financially disabled."

For the foregoing reasons, the government's motion to dismiss is **GRANTED**. The clerk of the court is instructed to dismiss the complaint. Each party is to bear its own costs.

**IT IS SO ORDERED**.

s/Nancy B. Firestone
NANCY B. FIRESTONE
Judge

---

[14]In its motion to dismiss, the government argued in the alternative that even assuming, arguendo, that the court may consider evidence of the alleged oral agreement, the plaintiffs' complaint must still be dismissed because under the terms of that agreement Mr. Bova's authority to act on the taxpayer's behalf was triggered as soon as the taxpayer became unable to handle her affairs. Having concluded that the court may not consider the plaintiffs' proposed testimony regarding an oral agreement, however, the court has no occasion to consider the government's alternative argument regarding the effect of such an agreement on this case.